**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MANAGED STORAGE INTERNATIONAL, | ) | |
| INC., et al., | ) | Case No. 09-10368   (MFW) |
| | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | Jointly Administered |
| | ) | |
| JEOFFREY L. BURTCH, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AVNET, INC. | ) | |
| | ) | |
| Defendant. | ) | Adv. No. 12-50026   (MFW) |
| _____ | ) | |
| | ) | |
| JEOFFREY L. BURTCH, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BELL MICROPRODUCTS, INC. and | ) | |
| AVNET, INC. | ) | |
| | ) | |
| Defendant. | ) | Adv. No. 12-50028   (MFW) |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.  The Court, therefore, accepts the facts as averred in the Complaint, which must be presumed as true for the purposes of this Motion to Dismiss.  See Ascroft v. Iqbal, 556 U.S. 662, 678 (2009).

Before the Court are the Motions of Avnet, Inc. ("Avnet")
and Bell Microproducts, Inc. ("Bell") to Dismiss the Trustee's
Complaint under Rule 12(b)(6) based on a release obtained by
Avnet from Managed Storage International, Inc. and its related
affiliates (the "Debtors") during the chapter 11 case.  For the
reasons set forth below, the Court will grant the Motion of Avnet
and deny the Motion of Bell.

I.   <u>BACKGROUND</u>

On February 4, 2009, the Debtors filed voluntary petitions
under chapter 11 of the Bankruptcy Code.  On that same day the
Debtors filed a motion for approval of bid procedures and a
motion to sell all their assets free and clear of liens to Laurus
Master Fund, Ltd. ("Laurus") or to a higher and better bidder.

At the hearing held on February 26, 2009, to consider the
bid procedures, Avnet appeared and asserted a purchase money
security interest in certain of the assets of the Debtors,
including any accounts receivable or proceeds relating to those
assets.  (D.I. 94.)[2]  In addition, Avnet filed a limited
objection to the sale motion asserting entitlement to the
proceeds of its collateral.  (D.I. 145.)  On April 2, 2009, the

---

[2]  Citations to pleadings in the bankruptcy case are "D.I.
#."  Citations to pleadings in the adversary proceeding are "D.I.
Adv. #."

Court approved the sale to Laurus.  At that time, Avnet, the Debtors and the Official Unsecured Creditors' Committee (the "Committee") entered into a stipulation providing for the segregation of the proceeds of the Avnet collateral.  (D.I. 195.) The Court approved the stipulation on April 14, 2009.  (D.I. 213.)

Notwithstanding the stipulation, the Debtors did not segregate the proceeds of the Avnet collateral.  As a result, Avnet filed a Motion on February 24, 2010, seeking a turnover of its collateral from Laurus.  (D.I. 371.)  The hearing on the Avnet motion was continued several times and, ultimately, a further stipulation was executed by Avnet, the Debtors, and Laurus whereby Laurus paid Avnet $975,000 and the parties exchanged certain releases (the "Stipulation").  (D.I. 400 at Ex. A.)  Specifically, the Stipulation provided for a release of the Debtors by Avnet and a release of Avnet and its predecessors successes, and assigns by the Debtors and their predecessors, successors and assigns from any and all claims relating to the Debtors and their chapter 11 cases (the "Release").  (Id.)  The Stipulation was submitted under certification of counsel and the Court approved it on May 19, 2010.  (Id.)

Thereafter, the Court converted the Debtors' cases to chapter 7 on November 3, 2010, and appointed Jeoffrey L. Burtch

(the "Trustee") as the chapter 7 trustee.  Around that time,
Avnet acquired Bell as evidenced by a Certificate of Merger filed
in New York on December 22, 2010.  (Adv. D.I. 6 at Ex. A.)

On January 12, 2012, the Trustee filed a complaint against
Avnet seeking to avoid and recover $5,444,541.11 as an alleged
preference.  On that same day, the Trustee filed a preference
action against Bell (and Avnet as its sucessor) seeking to
recover $969,017.06 as an alleged preference.

On March 30, 2012, Avnet and Bell filed Motions to Dismiss
the Trustee's preference complaints based on the Release given to
Avnet by the Debtors.  The Motions have been fully briefed and
are ripe for decision.


II.  <u>JURISDICTION</u>

This Court has core jurisdiction over these preference
actions.  28 U.S.C. §§ 1334 & 157(b)(2)(F).  The Court has the
power to enter an order on a motion to dismiss even if the matter
is non-core or the Court does not have the power to enter a final
judgment on the merits.  <u>See, e.g.</u>, <u>Boyd v. King Par, LLC</u>, Case
No. 11-CV-1106, 2011 WL 5509873, at *5 (W.D. Mich. Nov. 10, 2011)
("[U]ncertainty regarding the bankruptcy court's ability to enter
a final judgment . . . does not deprive the bankruptcy court of
the power to entertain all pretrial proceedings, including

4

summary judgment."); In re Trinsum Grp., Inc., 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After Stern v. Marshall, the ability of bankruptcy judges to enter interlocutory orders in proceedings . . . has been reaffirmed . . . .").


III. DISCUSSION

    A.   Standard of Review

    A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist."). A claim is deemed sufficient if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A complaint is sufficient if the claim is "facially plausible," a determination that is based upon the reviewing court's "judicial experience and common sense." Id. at 1950.

    The Third Circuit has implemented a two-part analysis: "First the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).
See also Iqbal, 129 S. Ct. at 1949-50 ("Threadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements, do not suffice . . . . When there are well-pleaded
factual allegations, a court should assume their veracity and
then determine whether they plausibly give rise to an entitlement
to relief.").  "The plaintiff must put some 'meat on the bones'
by presenting sufficient factual allegations to explain the basis
for its claim."  Buckley v. Merrill Lynch & Co., Inc. (In re DVI,
Inc.), Adv. No. 08-50248, 2008 WL 4239120, at *4 (Bankr. D. Del.
Sept. 16, 2008).

        "In a motion to dismiss for failure to state a claim,
submitted pursuant to Rule 12(b)(6), the Court may consider (1)
documents attached to or incorporated by reference into the
complaint; (2) matters of public record; [and] (3) undisputably
authentic documents upon which the claims are based."  In re
Fruehauf Trailer Corp., 250 B.R. 168, 184 (D. Del. 2000).  See
also Schafer v. Decision One Mortg. Corp., C.A. No. 05-5653, 2009
WL 1532048, at *3 (E.D. Pa. May 29, 2009).

        In this case, the Release was incorporated into a
stipulation which was filed of record in the bankruptcy case.
Therefore, the Court may consider, in connection with the Motions
to Dismiss, the effect of that Release.  The Court may also

consider the effect of the Certificate of Merger which was filed

as a matter of public record.

   B.   <u>Action against Avnet</u>

   Avnet contends that the preference action against it by the

Trustee fails to state a claim because all claims against it by

the estate are barred by the Release it received from the

Debtors.  <u>See, e.g.</u>, <u>Geraghty v. Ins. Servs. Office, Inc.</u>, 369

Fed. Appx. 402, 406 (3d Cir. 2010) (affirming dismissal of claims

that were the subject of a valid release); <u>Three Rivers Motors

Co. v. Ford Motor Co.</u>, 522 F.2d 885, 897 (3d Cir. 1975)

(instructing District Court to dismiss claims covered by general

release).

   The Release contained in the Stipulation provides:

   Debtors for themselves and their respective heirs,
. . . successors and assigns hereby:

   (a) release and discharge Avnet and each of its
heirs, . . . predecessors, successors and assigns, from
any and all actions, causes of action, . . . claims and
demands relating to the Debtors and their Chapter 11
cases only, in law or equity, including but not limited
to any claims relating to the Avnet PMSI collateral . .
. .

(D.I. 400 at Ex. A.)

   In this case, the Trustee argues that the Release does not

shield Avnet from preference liability because (1) the Trustee is

not bound by the Release, (2) the scope of the Release does not

include the preference claims, and (3) the Release was not
properly approved with notice and a hearing as required by
Bankruptcy Rule 9019.

     1.   Binding on Trustee

It is a well-settled principal that a "Chapter 11 debtor-in-
possession can enter into a binding agreement with a secured
creditor, which will be enforceable against a subsequently
appointed Chapter 7 trustee."  Armstrong v. Norwest Bank, Minn.,
N.A. (In re Trout), 964 F.2d 797, 801 (8th Cir. 1992); In re
Bettis, 97 B.R. 344, 347 (Bankr. W.D. Tex. 1989); Pollack v. Fed.
Dep. Ins. Corp. (In re Monument Record Corp.), 71 B.R. 853, 861
(Bankr. M.D. Tenn. 1987).

Despite the general rule that releases signed by a debtor in
possession are binding on the trustee, the Trustee in this case
argues that the intent of the parties was otherwise.  He relies
on the absence of the phrase "and any chapter 7 trustee in a
superseding case" in the Release of Avnet which was included in
the release granted to Laurus in the same Stipulation.  This, he
contends, is evidence of an intent by the Debtors not to bind the
Trustee to the Avnet Release.  (D.I. 400 at Ex. A.)

Releases are interpreted according to general principles of
contract construction.  Northwestern Nat'l Ins. Co. v. Esmark,
Inc., 672 A.2d 41, 43 (Del. 1996).  When the release is clear and

unambiguous, only "fraud, duress, coercion, or mutual mistake" are appropriate grounds for invalidation. Deuley v. DynCorp Int'l, Inc., 8 A.3d 1156, 1163 (Del. 2010), cert. denied, 131 S.Ct. 2119 (2011) (internal quotation omitted).

The Court finds that the mere inconsistency between the releases granted to Avnet and to Laurus is insufficient evidence of an intent not to bind the Trustee. The Court concludes that the use of the term "successor" to the Debtors in the Stipulation evinces an intent to include the Trustee. Trout, 964 F.2d at 801 (holding that "it is axiomatic that the Trustee is bound by the acts of the debtor-in-possession."); In re Philadelphia Athletic Club, Inc., 17 B.R. 345, 347 (Bankr. E.D. Pa. 1982) (concluding that "the trustee is a successor to the debtor in possession and is, in general, bound by the terms of any contract executed by the debtor while it was the debtor in possession.").

To overcome the general rule that the agreement by the Debtors binds him, the Trustee must present evidence supporting a valid reason to ignore that rule. Begier v. American Express, Inc. (In re American Int'l Airways, Inc.), 75 B.R. 1023, 1023 (Bankr. E.D. Pa. 1987) (holding that trustee must "present evidence of factors, including equitable considerations" why he should not be "bound by the DIP's pre-appointment court-approved Stipulation.").

The Trustee argues that several of the exceptions to the general rule that he is bound apply in this case.

a.    <u>Prejudice to Estate</u>

The Trustee contends that if there is prejudice to the estate a trustee will not be bound by a prior stipulation of the debtor.  <u>Philadelphia Athletic Club</u>, 17 B.R. at 347 (noting that "there might be occasions when the court should scrutinize actions taken by and/or contracts made by debtors while in possession (as, for example, where there is evidence of fraud or prejudice to the estate").  The Trustee argues that there is extreme prejudice to the estate by the waiver of its $5 million preference claim against Avnet, which he argues renders the Release non-binding on the Trustee.

The Court rejects the Trustee's argument.  The Trustee has not asserted there was any "fraud, duress, coercion or mutual mistake" in connection with the Stipulation and Release.  <u>Deuley</u>, 8 A.3d at 1163.  All he has alleged as prejudice is the fact that the Release bars the prosecution of a potential $5 million preference.[3]  If that were enough, however, all releases would be invalid because they bar potentially valuable claims.  The Court

_____

[3]  Of course, at this stage, it is only a potential recovery for the estate.  Avnet has not filed an answer to the Complaint nor raised any affirmative defenses it may have under section 547(c).

concludes that without actual "fraud, duress, coercion or mutual mistake," the Release executed by the Debtors is binding on the Trustee.  <u>Id</u>.

    b.   <u>Lack of Consideration</u>

The Trustee argues further, however, that the Release of the preference claim is invalid because there was no consideration for it.  The Trustee relies on <u>In re Lewis</u>, 157 B.R. 555, 560 (Bankr. E.D. Pa. 1993), for his contention that lack of consideration can render an agreement invalid as to a successor-in-interest.  In <u>Lewis</u>, a creditor sought to invalidate a settlement agreement between the debtors and another creditor. <u>Id</u>. at 558-60.  All creditors were provided notice of the settlement and no objections were received.  The Court held that "the Settlement was entered into in circumstances which were not ideal from the Debtors' standpoint, but were not, in our view, not [sic] such as to render the Settlement invalid for lack of consideration or conscionability." <u>Id</u>. at 560.  Thus, the Trustee argues that the <u>Lewis</u> court left open the possibility that lack of consideration could render an agreement of the debtor-in-possession invalid and non-binding on the Trustee.

The Court concludes that <u>Lewis</u> did not change the test for invalidating a settlement by a debtor-in-possession.  The language relied upon by the Trustee is mere dicta; the <u>Lewis</u>

Court did not invalidate the settlement based solely on lack of consideration.  Id. at 560.

Even if lack of consideration were enough to invalidate the Release, however, Avnet asserts that there was valid consideration in this case.  The Stipulation identifies the benefit to the estate as "avoid[ing] the costs, expenses and outcome of litigation."  (D.I. 400 at Ex. A.)  In addition, the estate received a general release from both Avnet and Laurus. (Id.)  Avnet had asserted entitlement to the proceeds of its collateral (or to the collateral itself) and sought an order of contempt against the Debtor for failing to comply with the Court's April 14, 2009, Order requiring segregation of those proceeds.

The Court agrees with Avnet and finds that there was valid consideration given for the Release.  While the Trustee may argue that the Stipulation was not the best deal possible for the Debtor, it is not unconscionable.  The Trustee responds that the consideration was given for release of the dispute over the sale proceeds, not for a release of the preference actions.  The Court, however, concludes that the release of the preferences cannot be isolated from the release of the other claims. Although the original dispute involved the distribution of the proceeds from the sale, the compromise included all claims among

12

the parties.  Avnet agreed to accept less than it claimed it was
entitled to receive from the PMSI collateral and to resolve its
contempt claim, in exchange for a release of all claims the
estate and the Laurus parties had against it.  The Court finds
that the consideration was valid and not unconscionable.

      c.  <u>Notice</u>

The Trustee also argues that the Stipulation and Release of
Avnet is not binding on him because adequate notice of its terms
was not provided to all creditors and interested parties.  <u>See</u>,
<u>e.g.</u>, <u>Terlecky v. Peoples Bank, N.A. (In re Amerigraph, LLC)</u>, 456
B.R. 349, 351 (S.D. Ohio 2011) ("[T]he general rule that a
trustee is bound by agreements entered into by the debtor is
applicable only if proper notice of the debtor-in-possession's
agreement is provided to parties in interest.  Accordingly, those
courts that have applied the rule have done so only after making
it clear that adequate notice has been provided."); <u>In re
Buzzworm, Inc.</u>, 178 B.R. 503, 513-14 (Bankr. D. Colo. 1994)
(holding that order approving cash collateral stipulation waiving
certain estate rights was not binding on trustee because notice
to creditors did not adequately disclose the rights being
waived).  <u>See also</u> <u>Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.
(In re Int'l Fibercom, Inc.)</u>, 503 F.3d 933, 945 (9th Cir. 2007)
(holding that trustee was not bound by debtor-in-possession's

court-approved assumption of insurance policy because the motion
was granted before the creditors' committee had sufficient time
to review it in violation of the courts' general orders and the
motion did not state that the relief would result in cross-
collateralization).

The Trustee notes that nothing in the certification of
counsel submitting the Stipulation alerted creditors to the fact
that the estate had a preference claim of more than $5 million
against Avnet which was being released by the Stipulation.  (D.I.
399.)  The Trustee further argues that the settlement encompassed
a substantial compromise that should have been the subject of a
Rule 9019 motion[4] and filed with the requisite twenty-one days'
notice[5] to all creditors.  See, e.g., Hyundai Motor Fin. Co. v.
McKay (In re McKay), 443 B.R. 511, 523 (Bankr. E.D. Ark. 2010)
("By its own terms, Rule 9019(a) applies to settlements reached
by trustees and Chapter 11 Debtors-in-possession . . . .").  But
see In re Hall, Bankr. No. 06-40872, 2010 WL 1730684, at *8

---

[4] "On motion by the trustee and after notice and a hearing,
the court may approve a compromise or settlement.  Notice shall
be given to creditors, the United States trustee, the debtor, and
indenture trustees as provided in Rule 2002 and to any other
entity as the court may direct."  Fed. R. Bankr. P. 9019(a).

[5] [T]he clerk, or some other person as the court may direct,
shall give the debtor, the trustee, all creditors and indenture
trustees at least 21 days' notice by mail of . . . (3) the
hearing on approval of a compromise or settlement of a
controversy . . . ."  Fed. R. Bankr. P. 2002(a)(3).

(Bankr. D. Kan 2010) ("[I]t is clear that Rule 9019 does not apply to compromises not involving the estate."); Hass v. Hass (In re Hass), 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002) ("Settlement of a controversy under Section 523(a) generally affects only the particular creditor and the debtor post-petition, and approval of such a compromise generally will not affect the rights of parties interested in the debtor's estate.").

The Notice of Agenda of Matters Scheduled for Hearing on May 19, 2010 (the "Agenda") was served on all parties in interest, including the Committee on May 17, 2010. (D.I. 396.)  The only contested matter scheduled as going forward at that hearing was Avnet's Motion to compel turnover of its collateral. (Id.)  The Agenda stated that Avnet's counsel had circulated a proposed stipulation which the parties were attempting to finalize prior to the hearing on Avnet's motion. (Id.)  On May 19, 2010, an Amended Notice of Agenda of Matters Scheduled for Hearing on May 19, 2010 (the "Amended Agenda") was served on all parties in interest. (D.I. 398.)  The Amended Agenda stated that the parties were submitting under certification of counsel a stipulation resolving the matter and that the hearing had been cancelled as a result. (Id.)  In accordance with the Amended Agenda, Avnet filed a certification of counsel attaching the Stipulation. (D.I. 399.)  The certification requested that the

15

Court enter the proposed form of Order approving the Stipulation. (Id.)  That same day, the Court entered the Order approving the Stipulation.  (D.I. 400.)  According to the affidavit of service, the Order was served on all parties in interest, including the Committee on May 20, 2010.  (D.I. 401.)

Even though it is not clear that the Committee had advanced notice of the terms of the Stipulation, including the Release, the Court finds that notice was appropriate under the circumstances.  First, approval of a settlement under Rule 9019 is within the discretion of the bankruptcy court.  Key3Media Grp., Inc. v. Pulver.com Inc. (In re Key3Media Grp., Inc.), 336 B.R. 87, 92 (Bankr. D. Del. 2005) (finding that approving a settlement is within the sound discretion of the bankruptcy court pursuant to Bankruptcy Rule 9019(a)).  Next, Rule 9006(c) allows the Court to shorten the notice required for motions brought under Rule 9019, with or without a motion or a hearing, and Rule 2002(a)(3) allows the Court to dispense with notice altogether for "cause shown."  Fed. R. Bankr. P. 2002(a)(3), 9006(c).  Thus, the Court is authorized to approve settlements without twenty-one days' notice of the motion.  See, e.g., In re Borders Grp., Inc., 453 B.R. 477, 485 (Bankr. S.D.N.Y. 2011) (holding that five-days' notice was sufficient where the Debtor would capture the benefits of a streamlined asset sale); Reaves v. Comerica Bank of

California (In re GTI Capital Holdings, LLC), Adv. No. 03-00583,
2008 WL 961112, at *7 (Bankr. D. Ariz. April 4, 2008) (holding
that Rule 9006(c) allowed the Court to shorten notice of the
hearing on the Settlement Agreement to eighteen-days before the
start of a two-day trial).

    In the case at bar, the Court had cause to shorten notice of
the Release.  Here, the Committee was a party (including a
signatory) to the prior stipulation with Avnet, which was
approved by the Court.[6]  (D.I. 195.)  Further, the Committee and
other parties became aware of the Debtors' failure to comply with
the Order approving the prior stipulation when Avnet filed and
served its Motion to compel turnover of its collateral.  (D.I.
371 & 372.)  The Committee and other interested parties had
notice from the Agenda that an additional stipulation was being
circulated to resolve Avnet's motion.  Thus, the Court concludes
there was no prejudice by the lack of twenty-one days' notice of
the Stipulation.

    Even if advance notice of the Stipulation was insufficient,
the Committee (or any other party in interest) had notice of the
entry of the Order approving the Stipulation and had the

---

[6] Because the Committee was active in the case and had been
a signatory to the prior Avnet stipulation, the Court finds it
probable that the Committee had first-hand knowledge of the
Stipulation and Release.

opportunity to move for relief from the Order pursuant to Rule
60(b) or to appeal the Order.  See, e.g., United Aid Funds, Inc.
v. Espinosa, 130 S.Ct. 1367, 1380 (2010) (holding where "a
party is notified of a plan's contents and fails to object to
confirmation of the plan before the time for appeal expires, that
party has been afforded a full and fair opportunity to litigate,
and the party's failure to avail itself of that opportunity will
not justify Rule 60(b)[] relief").  Consequently, the Court
concludes that the notice of the Stipulation (and Release) was
adequate.

Because the Court finds that there was consideration and
notice of the Stipulation and Release and the Trustee has not
alleged any fraud, the Court concludes that the Trustee is bound
by the Release.

2.   Scope of the Release

The Trustee also argues that the Release does not
unambiguously include preference actions the estate has against
Avnet.  He contends that particularly where the estate has a
preference claim against Avnet in excess of $5 million, the
intent to release that claim must be explicit.

The scope of a release is determined by the intent of the
parties as stated by the plain language of the contract.  Seven
Invs., LLC v. AD Capital, LLC, 32 A.3d 391, 396 (Del. Ch. 2011).

18

"[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Esmark, 672 A.2d at 43 (quoting Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992)). A conflicting interpretation of the agreement "does not create an ambiguity." Id.

Releases do not need to include explicitly all causes of action which are covered. Hob Tea Room v. Miller, 89 A.2d 851, 856 (Del. 1952). A release may be a general release, which is favored by the courts for being a useful tool in creating certainty and clarity. Id. When a release is general on its face, there must be evidence that the parties intended to exclude a specific cause of action from the general release for it not to be covered. Id. at 857.

In this case, the Release unambiguously covers "any and all . . . claims and demands relating to the Debtors and their Chapter 11 cases." (D.I. 400 at Ex. A.) Preferences are clearly related to chapter 11 bankruptcy cases. Therefore, the Court concludes that the preference claim brought by the Trustee falls within the language of the Release.

Further, the parties entered into the Release post-petition. This was after the payments challenged as preferential were made.

Therefore, there is no issue about the Release covering future conduct. <u>Cf</u>. <u>Camiolo v. State Farm Fire and Cas. Co.</u>, 334 F.3d 345, 362 (3d Cir. 2003) (holding that where Defendant knew that he was under investigation by the grand jury regarding certain conduct, the release applied to all future possible claims relating to such conduct); <u>Nat'l Rural Utils. Co-Op. Fin. Corp. v. Prosser (In re Nat'l Rural Utils. Co-Op. Fin. Corp.)</u>, 467 B.R. 59, 68 (Bankr. D. Del. 2011) (holding that a release is enforceable for future matters fairly within the contemplation of the parties at the time the release is given).

The Court concludes that the Release in question was broad enough to cover the Trustee's preference claim against Avnet. Because the Release is binding on the Trustee, the Court will dismiss the Trustee's preference action against Avnet.

C.    <u>Action Against Bell</u>

General releases have been construed quite broadly, as discussed above, but they are not without limitations.  The Third Circuit explored the applicability of a general release in a situation involving a merger similar to the case at bar. <u>Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 247 F.3d 44, 55 (3d Cir. 2001) (holding that release did not cover a third party successor for independent claims that the releasor had against that party).  In <u>Medtronic</u>, two parties had been

engaged in litigation which resulted in mutual releases.  Id. at
48-49.  Later, one of the parties filed suit against a third
party.  Id. at 50.  While the suit was pending, the releasee
purchased the third party and asserted the release as a defense
to the claims.  Id. at 50.  The Third Circuit concluded that the
release did not protect the third party because the suit
concerned interests that were held prior to the merger.  Id. at
55.  The Court found it was inappropriate to allow "the successor
to a release [to] apply it to bar claims quite beyond anything
the parties to the release could have contemplated."  Medtronic,
247 F.3d at 58.

     In a case almost identical to the facts of this case, the
Court concluded that a release could not be used as a defense to
preference claims against a company that merged into one which
held a release.  Mims v. Compaq Computer Corp. (In re PC Serv.
Source, Inc.), Adv. No. 03-3277, 2004 WL 3622644 at *7 (Bankr.
N.D. Tex. Dec. 3, 2004).  In Mims, the debtor had entered into a
settlement agreement during the bankruptcy case in which it
granted a general release to HP.  Id.  HP later acquired Compaq
and subsequently invoked the release to bar a preference claim
against Compaq.  Id.  The Court concluded that the release in
favor of HP prior to the merger could not be applied to the
preference claims against Compaq stemming from payments made

while HP and Compaq were separate legal entities.  Id.  The Court noted that there was no evidence that any parties involved anticipated the merger or that there was any consideration given for the release of "causes of action of totally separate legal entities."  Id.

Applying the rationale of Medtronic and Mims, the Court concludes that the release of Avnet did not release any claims that the Trustee has against Bell which arose prior to its merger with Avnet.  Medtronic, 247 F.3d at 55; Mims, 2004 WL 3622644, at *7.  Therefore, the Court will deny the motion to dismiss the complaint against Bell (and Avnet as its successor) for the alleged $969,017.06 preference.

IV.  CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss filed by Avnet and will deny the motion to dismiss filed by Bell.

An appropriate Order is attached.

Dated: November 26, 2012          BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge